No. 24-3374

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

GENOA JONES AND CORNELL TINSLEY,

*Plaintiffs-Appellants*,

vs.

CITY OF NORTH LAS VEGAS, SCOTT SALKOFF, AND MICHAEL ROSE,

*Defendants-Appellees*,

On Appeal from the United States District Court for the District of Nevada
No. 2:21-cv-00241-CDS-DJA
Hon. Cristina D. Silva, *District Court Judge*

## APPELLEES' PETITION FOR PANEL REHEARING OR REHEARING EN BANC

NORTH LAS VEGAS CITY ATTORNEY
Andy Moore, Nevada Bar No. 9128
City Attorney
Noel E. Eidsmore, Nev. Bar No. 7688
Assistant City Attorney
Rhiann Jarvis Denman, Nev. Bar No. 13509
Chief Deputy City Attorney
2250 Las Vegas Boulevard N., Suite 810
North Las Vegas, Nevada 89030
moorea@cityofnorthlasvegas.com
eidsmoren@cityofnorthlasvegas.com
jarvisr@cityofnorthlasvegas.com
*Attorneys for Appellees*

## TABLE CONTENTS

TABLE OF AUTHORITIES.......................................................................................ii

I.     INTRODUCTION ...........................................................................................1

II.    BRIEF PROCEDURAL HISTORY.................................................................2

III.   ARGUMENT....................................................................................................3

   A.  A REHEARING IS APPROPRIATE AND NECESSARY BECAUSE THE
PANEL FAILED TO CONSIDER THE CONSTANT POLICE PRESENCE
AROUND THE PERIMETER IN MAKING ITS CONCLUSION ON THE HOT
PURSUIT.................................................................................................................3

   B.  A REHEARING OR REHEARING EN BANC IS APPROPRIATE AND
NECESSARY BECAUSE THE PANEL FAILED TO CORRECTLY APPLY
THE QUALIFIED IMMUNITY ANALYSIS. .......................................................6

   C.  A REHEARING EN BANC IS APPROPRIATE AND NECESSARY TO
ENSURE CONSISTENCY IN THE CIRCUIT ON HOT PURSUIT AND
QUALIFIED IMMUNITY, AND TO ENSURE THAT LAW ENFORCEMENT
PRACTICES ARE NOT HINDERED BY THIS PANEL'S OPINION. ..............8

IV.   CONCLUSION ..............................................................................................12

V.    CERTIFICATE OF COMPLIANCE .............................................................13

VI.   CERTIFICATE OF SERVICE.......................................................................14

ADDENDUM SUBMITTED PURSUANT TO CIRCUIT RULE 28-2.7………..15

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ......................................................2, 7

*City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)................2

*City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) .............................................2

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) .........................................................7, 10

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).................................................2

*Mullenix v. Luna,* 577 U.S. 7, 11 (2015) ...................................................... 6, 7, 10

*Newman v. Underhill*, 134 F. 4th 1025 (9th Cir. April 23, 2025) .........................8, 9

*Reichle v. Howards*, 566 U.S. 658, 664 (2012) .....................................................6, 11

*Stanton v. Sims*, 571 U.S. 3, 10 (2013) .......................................................................7

*United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001)............................ 3, 4, 7

**Statutes**

42 U.S.C. § 1983 ............................................................................................................2

**Rules**

9th Cir. R. 40-1 .............................................................................................................1

Fed R. App. P. 40...........................................................................................................1

**Constitutional Provisions**

Fourth Amendment ........................................................................................... passim

## I.   INTRODUCTION

In accordance with Fed R. App. P. 40 and 9th Cir. R. 40-1 to 40-4, Defendants/Appellees Scott Salkoff and Michael Rose respectfully request a rehearing or a rehearing en banc for the following reasons:

1.  A rehearing by the panel is appropriate because both a material point of fact and law were overlooked in the panel's Opinion. First, the panel's conclusion on the Fourth Amendment search claim overlooks material facts that not only distinguish this case from the case law relied on by the panel, but that would also necessarily impact the panel's conclusion if the facts had been incorporated into that conclusion.

Second, the panel relied solely on one plainly distinguishable case to determine the law was clearly established for purposes of qualified immunity. Such a determination is erroneous under well-established United States Supreme Court precedent on analyzing qualified immunity.

2.   A rehearing en banc is appropriate for three reasons. First, consideration by the full Court is necessary to secure and maintain uniformity in the Court's decisions. The Opinion in this case deviates from another panel's finding in the *Newman* case involving a hot pursuit analysis. Second, the opinion directly conflicts with Supreme Court precedent for the appropriate qualified immunity analysis, despite the Supreme Court's admonishment of the Ninth Circuit for failing

1

to apply the appropriate standard in numerous cases.[1] Finally, the proceeding involves a question of exceptional importance because of its potentially negative impact on police work nationally.

In undersigned counsel's judgment, the above points necessitate a rehearing and/or rehearing en banc.

## II. BRIEF PROCEDURAL HISTORY

Pursuant to 42 U.S.C. § 1983, Plaintiffs/Appellants brought two Fourth Amendment claims for unreasonable search of their property and unreasonable seizure of their dogs against Defendant officers, a *Monell*[2] claim against the City of North Las Vegas, and a state law claim for conversion for their dogs. The District Court granted summary judgment on the three federal claims and remanded the state law claim. Defendant officers were granted qualified immunity on both Fourth Amendment claims. Plaintiffs' appeal to this Court followed. On September 8, 2025, after briefing and oral argument, the three-judge panel of this Court issued its opinion reversing the District Court on the Fourth Amendment unreasonable search claim, remanding that claim, reviving the state law conversion claim, and affirming

---

[1] *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015); *Kisela v. Hughes*, 584 U.S. 100, 104 (2018); and *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).
[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

2

the District Court on the Fourth Amendment unreasonable seizure claim and the

*Monell* claim (the "Opinion" or "Op.").

### III.  ARGUMENT

### A. A REHEARING IS APPROPRIATE AND NECESSARY BECAUSE THE PANEL FAILED TO CONSIDER THE CONSTANT POLICE PRESENCE AROUND THE PERIMETER IN MAKING ITS CONCLUSION ON THE HOT PURSUIT.

First, the panel concluded "that a pursuit is at best lukewarm, and certainly no

longer hot pursuit, when officers lose a suspect's trail in a residential neighborhood

for eighteen minutes," and likened the present case to *United States v. Johnson*, 256

F.3d 895, 905 (9th Cir. 2001). In the panel's holding and comparison to *Johnson*,

the panel failed to consider the material facts that officers had a continuous presence

in the area where the suspect fled, that officers established a line-of-sight perimeter

around that area, and that Officer Rose set up the perimeter rapidly.

The panel relied on the *Johnson* case to hold that the Defendant officers'

actions were unreasonable without fully evaluating the pertinent facts of *Johnson*.

Without examining those facts, the panel overlooked the clear distinction between

*Johnson* and the present case. Specifically, the missing facts include that the officer

in *Johnson* watched a suspect disappear into the woods, then followed a driveway

nearby until he came to a locked gate, left the area completely to go back to where

the suspect initially fled from the officer, away from the woods where the suspect

disappeared, and then returned to the locked gate and waited for backup for an

3

additional 15 minutes. *Johnson*, 256 F.3d at 899. No perimeter was set in *Johnson*. Officers decided to search the yard behind the locked gate based on a "gut feeling" that the suspect would go into that yard. *Id*. at 905-906. The *Johnson* Court determined that not only had 30 minutes passed from the time that the suspect was last seen going into the woods and when the search began, no other action was taken by the officers to monitor the suspect's movements while more officers arrived to provide backup. *Id*. at 908. The officers "no longer had any idea where [the suspect] was," and the continuity needed for hot pursuit was broken. *Id*.

In the present case, as the panel included in its recitation of the facts, "[s]everal units responded and helped Officer Rose establish a multiple-block perimeter around the area" where Officer Rose had last seen the suspect flee. Op. 5. The panel further included "[w]ith a perimeter in place, officers believed that nobody could leave the area without crossing their line of sight." Op. 5. However, the panel did not analyze the reasonableness of these actions, instead focusing solely on the fact that Officer Rose lost sight of the suspect after he jumped the wall into a yard neighboring the home from which he fled, which was four houses to the east of the yard into which the suspect jumped. In its conclusion, the panel then ignored that the line-of-sight perimeter was established by stating that "[o]fficers may not riffle through private spaces in an entire neighborhood merely because police have lost track of someone who earlier fled from them in the general vicinity." (Op. 11-12). Officers were not

4

going through an entire neighborhood, only an area inside a perimeter reasonably believed to be secured by line-of-sight based on the layout and Officer's Roses initial chase of the suspect.

Unlike *Johnson*, there was a constant police presence in the area, and officers had a reasonable belief that the suspect was still within the area around which they had established a perimeter. While the K-9 search into Plaintiffs' yard began approximately 18 minutes later, this delay was clearly different than the delay *Johnson* where no perimeter had been set, the pursuing officer left the area and returned, had no way of monitoring the suspect's movements, and allowed 30 minutes to pass prior to searching for the suspect on a property with no indication other than a gut feeling that the suspect would be on that property.

Here the immediacy prong of hot pursuit is met with the immediate chase by Officer Rose and establishment of the line-of-sight perimeter. The continuous prong of hot pursuit is met with the continuous police presence in the area and establishing a perimeter in which the suspect was believed to likely be hiding. The panel's conclusion that a search is no longer hot pursuit when officers lose a suspect's trail in a residential neighborhood for eighteen minutes overlooks material facts that support a different conclusion, and that at the very least completely distinguish this case from *Johnson*.

5

The fact that the panel had to make such a conclusion in this case supports a finding of qualified immunity, because there is no other consensus of case law or even a single case that has made a similar conclusion on similar facts. Officers only had notice that breaking the continuity of a chase during a hot pursuit by leaving an area, losing sight of a suspect, and not maintaining police presence to keep a general idea of a suspect's whereabouts for 30 minutes before entering a nearby property and searching violates the Fourth Amendment because of *Johnson*. That is clearly different than what happened in this case.

## B. A REHEARING OR REHEARING EN BANC IS APPROPRIATE AND NECESSARY BECAUSE THE PANEL FAILED TO CORRECTLY APPLY THE QUALIFIED IMMUNITY ANALYSIS.

The panel's decision completely overlooks the appropriate application of the qualified immunity analysis. As discussed above, the panel relied solely on *Johnson* to make the determination that the case law was so clear that it would have put every reasonable officer on notice that his conduct violated the Fourth Amendment. However, one factually distinguishable case is not enough to deny qualified immunity. In the legal standard discussion of the opinion, the panel did not cite precedent for the necessary analysis in determining whether law is "clearly established" for qualified immunity purposes. Specifically, a right is clearly established if it "is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna,* 577

U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). If there is no case on point to guide officers, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

According to the panel, *Johnson* "made it abundantly clear to officers in 2019 that they may not sweep through an area and search the properties within it simply because they believe a suspect is somewhere therein." (Op. 12). While *Johnson* may have made this specific scenario clear or that "there is no hot pursuit where 'the continuity of the chase was terminated permanently,'" (Op. 10 quoting *Johnson*, 256 F.3d at 908) these scenarios did not occur in the instant case. Instead, Officer Rose acted "immediately, making a 'split-second decision' to pursue the suspect'" in the most practical way possible to ensure that a potentially violent person was not running through the yards of innocent neighbors in the vicinity. (Op. 10 quoting *Stanton v. Sims*, 571 U.S. 3, 10 (2013)). Officers then rapidly set up a line-of-sight perimeter around the area where the suspect was last seen and searched only that area. *Johnson* is so factually distinct that it could not have put the officers on notice that under the facts of *Johnson*, their conduct *without a doubt* violated the Fourth Amendment. Indeed, even the *Johnson* court considered that *Johnson* was not a case

7

where officers did anything to monitor the suspect's location while waiting for backup, which would be delayed, not broken continuity. *Johnson*, 256 F.3d at 908. Officers did not break continuity of the chase in this case, and had the suspect been found during the search, this would not even be a question.

Relying solely on *Johnson* and general Fourth Amendment principles does not meet the "clearly established" standard to avoid granting qualified immunity to the officers in this case. Even the first paragraph from the panel in the Opinion supports qualified immunity, as the reference to the pursuit being "at best lukewarm" supports that the search did not clearly fall out of the realm of hot pursuit. (Op. 4).

## C. A REHEARING EN BANC IS APPROPRIATE AND NECESSARY TO ENSURE CONSISTENCY IN THE CIRCUIT ON HOT PURSUIT AND QUALIFIED IMMUNITY, AND TO ENSURE THAT LAW ENFORCEMENT PRACTICES ARE NOT HINDERED BY THIS PANEL'S OPINION.

The *Newman* case, decided by a different panel of this Court prior to the oral argument in this case, explores the hot pursuit analysis on similar facts with a much different conclusion. *Newman v. Underhill*, 134 F. 4th 1025 (9th Cir. April 23, 2025). In *Newman*, the officer's actions were found to be reasonable based on the same amount of requisite knowledge that the officers had in this case, and because these opinions are inconsistent, an en banc rehearing is appropriate.

As the panel explained, the officers in *Newman* followed the suspect to a dead-end street and watched the suspect run toward the back of the Plaintiff's house.

8

*Newman*, 134 F. 4th at 1028-29. The officer did not chase the suspect immediately into the yard of the plaintiff's house, but rather waited for back up and then entered the backyard, ultimately going into the plaintiff's house to search for the suspect nine minutes after losing sight of him. *Id*. at 1029. The officer had seen the suspect go in the direction of the house, determined that the terrain surrounding the backyard would limit the suspect's ability to leave the yard, the back door into the plaintiff's house was unlocked, and the officer believed that he heard someone open and close the backdoor. *Id*. The *Newman* panel found that losing sight of the suspect did not necessarily mean that the pursuit ended, and that the facts instead showed that the officers met the immediate and continuous prongs of hot pursuit. *Id*. at 1032-33.

Just like in *Newman*, where officers had a reasonably good idea where the suspect was hiding during the nine minutes between losing sight of him and entering the Plaintiff's house, officers in this case had a reasonably good idea that the suspect was contained within the perimeter when numerous officers rapidly arrived to set it up after Rose's initial pursuit of the suspect. The decision to wait for K-9s to assist in searching the perimeter, just like the officer waited for backup in *Newman*, delayed, but did not break the continuity of the chase. Much like *Newman*, the facts in this case show that a reasonable officer "would have believed that there was at least a fair probability" that the suspect was contained in the perimeter. *Newman*, 134 F. 4th at 1031. Overall, Defendant officers had the same level of requisite

9

knowledge as the officers in *Newman* to establish a "fair probability" that the suspect could have been hiding in Plaintiffs' yard: the suspect fled into a yard three houses west of Plaintiffs' house, a perimeter was rapidly established around the area, Storm alerted in the direction of Plaintiffs' yard, and the yard contained places where the suspect could hide.

The panel's finding in this case that the "Defendants lacked an exigent circumstance to search Plaintiffs' yard under clearly established law at the time of the incident," was a wholly different finding from that in *Newman*, and therefore, a rehearing en banc is appropriate. (Op. 13)

Further, as described in Section III., 1. above, the panel incorrectly applied the qualified immunity analysis by holding that the law was so clearly established (through one clearly distinguishable case and general Fourth Amendment principles) to put officers on notice that their actions violated the Plaintiffs' Fourth Amendment rights. The inconsistent application of qualified immunity within the Circuit muddies the waters in an already intense and high-stress profession. The qualified immunity analysis is well-established by the U.S. Supreme Court yet inconsistently applied depending on the Ninth Circuit panel. The U.S. Supreme Court has made it clear in numerous opinions that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'" (*Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and that the "clearly established" standard

10

cannot be met by citing to highly generalized legal principles, but must be shown through case law that puts every reasonable officer on notice that his conduct would violate the constitution (*Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Unfortunately, the effect of an improper application of the qualified immunity analysis results in rulings like this case where the application of one distinguishable case is stretched to create a desired outcome. Overall, the panel's conclusion that Defendant officers violated clearly established law and that they are not entitled to qualified immunity on these facts raises a question of exceptional importance because of its potentially negative impact on police work nationally. The panel's opinion seems to support the conclusion that if a potentially violent suspect runs and hides from police view, even staying in an area where police could reasonably form a perimeter, that the Fourth Amendment interests of nearby property owners to be free from unreasonable searches in the curtilage of their homes is of greater importance than the law enforcement officer's searching and finding the potentially dangerous suspect. Under the panel's conclusion, officers must fear being subject to civil liability if they have not seen a suspect for exactly 18 minutes, even having a reasonable belief based on training and experience that the suspect is within an area that the officers can reasonably identify. This will absolutely have a negative impact on police procedures and the ability to apprehend suspects in this circuit.

11

## IV. CONCLUSION

Defendants/Appellants respectfully petition for a rehearing and/or rehearing

en banc based on the reasons above.

DATED this __22nd__ day of September, 2025.

NORTH LAS VEGAS CITY ATTORNEY

By: _/s/ Rhiann S. Jarvis Denman_
      Andy Moore, Nevada Bar No. 9128
      City Attorney
      Noel E. Eidsmore, Nev. Bar No. 7688
      Assistant City Attorney
      Rhiann Jarvis Denman, Nev. Bar No. 13509
      Chief Deputy City Attorney
      2250 Las Vegas Boulevard N., Suite 810
      North Las Vegas, Nevada 89030
      *Attorneys for Appellees/Defendants*

## V.   CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 40-1, I certify that this petition is 12 pages long and

therefore complies with the 15-page limit. I further certify that this petition complies

with FRAP 32(c)(2) because the type size and typeface used in this Answering Brief

is proportionately spaced 14-point Times New Roman font.

DATED this __22nd__ day of September, 2025.

NORTH LAS VEGAS CITY ATTORNEY


By: _/s/ Rhiann S. Jarvis Denman_
    Andy Moore, Nevada Bar No. 9128
    City Attorney
    Noel E. Eidsmore, Nev. Bar No. 7688
    Assistant City Attorney
    Rhiann Jarvis Denman, Nev. Bar No. 13509
    Chief Deputy City Attorney
    2250 Las Vegas Boulevard N., Suite 810
    North Las Vegas, Nevada 89030
    *Attorneys for Appellees/Defendants*

## VI. CERTIFICATE OF SERVICE

I hereby certify that the 22nd day of September 2025, I electronically filed the foregoing **APPELLEES' PETITION FOR PANEL REHEARING OR REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

*/s/ Crystal Williams*
An Employee of the City of North Las Vegas

## ADDENDUM FOR STATUTES AND CONSTITUTIONAL PROVISIONS SUBMITTED PURSUANT TO CIRCUIT RULE 28-2.7

### 42 U.S.C. § 1983 (Civil action for deprivation of rights)

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

### Fourth Amendment to the United States Constitution

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GENOA JONES; CORNELL TINSLEY, | No. 24-3374 |
| *Plaintiffs - Appellants*, | D.C. No. 2:21-cv-00241-CDS-DJA |
| v. | |
| CITY OF NORTH LAS VEGAS; SCOTT SALKOFF; MICHAEL ROSE, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Cristina D. Silva, District Judge, Presiding

Argued and Submitted May 22, 2025
San Francisco, California

September 8, 2025

Before: Michelle T. Friedland and Salvador Mendoza, Jr.,
Circuit Judges, and Robert S. Lasnik, District Judge.[*]

Opinion by Judge Mendoza

* The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

# SUMMARY[**]

## Fourth and Fourteenth Amendments

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the City of North Las Vegas and two police officers in plaintiffs' action alleging that defendants violated their Fourth and Fourteenth Amendment rights when the officers physically intruded into plaintiffs' backyard without permission while searching for a suspect, and one of the officers shot and killed two of plaintiffs' dogs after the dogs attacked the police K-9.

The panel reversed the district court's grant of qualified immunity and summary judgment to the individual police officers with respect to their search of plaintiffs' backyard. Defendants could not avail themselves of the "hot pursuit" exception to the Fourth Amendment's warrant requirement, which only applies when officers are in "immediate" and "continuous" pursuit of a suspect from the scene of the crime. Here, the continuity of the pursuit was broken when defendants lost track of the suspect's whereabouts for eighteen minutes. Because defendants lacked an exigent circumstance to search plaintiffs' yard under clearly established law at the time of the incident, they were not entitled to qualified immunity.

The panel reversed the district court's dismissal of plaintiffs' state law claim because the district court declined to exercise supplemental jurisdiction over the claim solely

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

based on its grant of summary judgment to defendants on all of plaintiffs' federal claims.

The panel affirmed the district court's summary judgment for Lieutenant Salkoff, holding that he was entitled to qualified immunity with respect to his use of force against plaintiffs' dogs because, given the spontaneous confrontation, the panel could not say that he violated clearly established law.

The panel affirmed the district court's summary judgment on plaintiffs' *Monell* claims pertaining to both the warrantless search and use-of-force claims. Plaintiffs offered no evidence of a pattern of warrantless search violations or other evidence establishing that the City was deliberately indifferent to plaintiffs' Fourth Amendment rights or that its conduct had become a traditional method for carrying out policy.

The panel remanded for further proceedings.

## COUNSEL

Margaret A. McLetchie (argued) and Leo S. Wolpert, McLetchie Law, Las Vegas, Nevada; Jennifer L. Braster, Naylor & Braster, Las Vegas, Nevada; for Plaintiffs-Appellants.

Rhiann J. Denman (argued) and Noel E. Eidsmore, Chief Deputy City Attorneys; Micaela R. Moore, Former City Attorney; Andrew D. Moore, City Attorney; North Las Vegas Office of the City Attorney, North Las Vegas, Nevada; for Defendants-Appellees.

Case: 24-3374, 09/22/2025, DktEntry: 46.1, Page 25 of 52

## OPINION

MENDOZA, Circuit Judge:

When does a hot pursuit turn cold?  Today we conclude that a pursuit is at best lukewarm, and certainly no longer hot pursuit, when officers lose a suspect's trail in a residential neighborhood for eighteen minutes.

A police officer saw a suspect flee from the back of a house into a neighboring backyard.  Instead of directly following the suspect, the officer hurried to his car, called for backup, and drove two blocks south to establish a perimeter around the area.  At least eighteen minutes passed before a K-9 unit alerted in the direction of Plaintiffs' backyard, several houses away from where the suspect had disappeared.  An officer with a K-9 searched the yard, rousing Plaintiffs' three dogs.  Two of the dogs attacked the police K-9 and were shot and killed by an officer.

Plaintiffs Genoa Jones and Cornell Tinsley sued under 42 U.S.C. § 1983, claiming the officers and the City of North Las Vegas violated their Fourth Amendment right to be free from unwarranted searches and seizures.  The district court granted summary judgment for the officers, reasoning that the officers' intrusion was permitted by the hot pursuit exception to the warrant requirement and that the use of force was reasonable under the circumstances.  The district court also granted summary judgment for the city, finding no support for Plaintiffs' failure-to-train theory.

We reverse, in part, holding that there is no hot pursuit where officers lose track of a suspect for eighteen minutes. We affirm with respect to the K-9 handler's use of force and

the claims against the city. We remand for further proceedings.

## I.

On February 15, 2019, at 3:47 p.m., North Las Vegas Police Department ("NLVPD") Officers Joseph Minelli ("Officer Minelli") and Michael Rose ("Officer Rose") responded to a possible domestic battery at a house on a residential cul-de-sac. While Officer Minelli spoke with a woman at the door, Officer Rose moved to the side of the house, where he witnessed a person flee over the back wall to the south into a neighboring yard. Officer Rose ran to his patrol car to request assistance. He drove two streets south hoping to cut off whomever had fled but did not catch sight of the person again. Several units quickly responded and helped Officer Rose establish a multiple-block perimeter around the area.

Meanwhile, Officer Minelli stayed at the home to investigate the domestic battery allegation. The woman who answered the door denied that there was any domestic violence, but Officer Minelli observed injuries on her face, including several injuries around her eyes and a long cut across her chin that had been stitched. The woman told Officer Minelli that police were not welcome at her house and that her boyfriend—whom officers suspected had battered the woman and whom they believed to be the person who fled—would be back that evening and police would need a warrant to apprehend him at the home. Officer Minelli remained at the address in case the suspect returned.

With a perimeter in place, officers believed nobody could leave the area without crossing their line of sight. A

sergeant on scene decided to call for a K-9 unit to search for the suspect.  NLVPD Lieutenant Scott Salkoff ("Lieutenant

Case: 24-3374, 09/23/2025, DktEntry: 46.1, Page 29 of 52

Salkoff") and his police K-9 Storm ("Storm") responded to the scene around 4:05 p.m., approximately eighteen minutes after Officer Rose saw the suspect flee.

Lieutenant Salkoff used Storm—who is trained to detect the odor of apocrine, a hormone some people release when they are afraid—to search within the perimeter. Lieutenant Salkoff informed residents of the searches using his patrol car's public address system. He also sent NLVPD Officer Lee Young ("Officer Young") ahead to seek consent from residents to search their yards.

Lieutenant Salkoff was searching a backyard four houses east and one house south of where the suspect vanished when Storm alerted to an odor coming from a distant, elevated position in the direction of Plaintiffs' walled-in backyard.[1]

Lieutenant Salkoff decided to search Plaintiffs' backyard. He had Officer Young check the gate, which was locked and posted with a "Beware of Dog" sign. Officer Young knocked on Plaintiffs' door to request their consent to search the yard but received no response because they were not home. To gain a vantage, Lieutenant Salkoff jumped onto the six-foot cinderblock wall that enclosed Plaintiffs' yard. He observed trash cans, where he thought the suspect might be hiding, and a fenced-in kennel area with

---

[1] We know Storm's alert came at least eighteen minutes after officers had last seen the person they were looking for—and, on the record before us, it may have been much later. Officer Rose saw someone flee at around 3:47 p.m. and Lieutenant Salkoff responded to the scene with Storm at approximately 4:05 p.m. Lieutenant Salkoff does not recall precisely when or where he started his search and says he may have

searched one yard or more than a dozen yards before Storm smelled fear in the air.  Officer Rose recalls that the search lasted for more than an hour and possibly for two or three hours.

an open gate and three dog houses and bowls but did not see
any dogs.

With neither a warrant nor Plaintiffs' consent, Lieutenant
Salkoff hopped down from the wall into their backyard.
Officer Rose then passed Storm over the wall. Plaintiffs'
three dogs were stirred from their doghouses, emerging to
investigate the unwelcome strangers in their yard.
Lieutenant Salkoff attempted to keep the dogs at bay,
kicking them and placing trash cans between them and
Storm. His efforts deterred one dog, but the other two—
Shadow and Whitewall—attacked Storm. Lieutenant
Salkoff drew his service weapon and killed both Shadow and
Whitewall.

Despite officers scouring the neighborhood, they never
found the person they were looking for.

Plaintiffs sued Lieutenant Salkoff, Officer Rose, and the
City of North Las Vegas ("the City"), asserting several
claims under 42 U.S.C. § 1983: Lieutenant Salkoff violated
the Fourth and Fourteenth Amendments when, without a
warrant, he entered Plaintiffs' backyard, and Officer Rose
violated the same when he passed Storm into the yard;
Lieutenant Salkoff violated the Fourth and Fourteenth
Amendments when he unreasonably seized their dogs by
shooting them dead; and the City was deliberately indifferent
to the risk of these violations. Plaintiffs also brought a state
law claim that Lieutenant Salkoff and the City violated
Nevada Revised Statutes § 41.130.

The district court granted Defendants' motion for
summary judgment on the constitutional claims, declined to
exercise supplemental jurisdiction over the remaining state

law claim, and entered judgment for Defendants. Plaintiffs timely appeal.

Case: 24-3374, 09/22/2025, DktEntry: 46.1, Page 33 of 52

## II.

We review a district court's grant of summary judgment de novo, *Spencer v. Pew*, 117 F.4th 1130, 1137 (9th Cir. 2024), including officers' entitlement to qualified immunity, *Sanderlin v. Dwyer*, 116 F.4th 905, 910 (9th Cir. 2024). In conducting this review, we take "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019); Fed. R. Civ. P. 56(e).

Qualified immunity protects government officials from liability under § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Waid v. County of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). "Either prong can be adjudicated on appeal by taking the facts as most favorable to the plaintiffs and applying the pertinent legal standards to those facts." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). Defendants are entitled to qualified immunity where we find "a negative answer at either step." *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 819 (9th Cir. 2023).

## III.

"When a law enforcement officer physically intrudes on the curtilage" of a home, like a walled-in backyard, "a search within the meaning of the Fourth Amendment has occurred." *Collins v. Virginia*, 584 U.S. 586, 593 (2018). "[A] small, enclosed yard adjacent to a home in a residential neighborhood . . . is 'curtilage' subject to Fourth Amendment protection." *United States v. Struckman*, 603

F.3d 731, 739 (9th Cir. 2010)) (quoting *United States v. Romero-Bustamente*, 337 F.3d 1104, 1108 (9th Cir. 2003)).

Such searches are "presumptively unreasonable absent a warrant." *Collins*, 584 U.S. at 593.

But the Fourth Amendment's warrant requirement "is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). An "exigent circumstance" such as "the hot pursuit of a fleeing suspect," "the need to prevent the imminent destruction of relevant evidence," and "the need to prevent the escape of a suspect" may constitute such an exception. *Struckman*, 603 F.3d at 743. To rely on the exigent circumstances exception, the government "must satisfy two requirements: first, the government must prove that the officer had probable cause to search," and "second, the government must prove that exigent circumstances justified the warrantless intrusion." *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001) (en banc) (per curiam). Probable cause exists where "the 'facts and circumstances' before the officer are sufficient to warrant a person of reasonable caution to believe" that a suspect would be found in a place. *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see also Newman v. Underhill*, 134 F.4th 1025, 1031 (9th Cir. 2025).

Lieutenant Salkoff and Officer Rose do not dispute that they physically intruded into Plaintiffs' walled-in backyard—Lieutenant Salkoff by entering the yard and Officer Rose by passing Storm over the wall. Such a warrantless search is presumptively unreasonable. *See Collins*, 584 U.S. at 593. The district court assumed, without explanation, that Lieutenant Salkoff and Officer Rose conducted this warrantless search while in hot pursuit of a fleeing suspect. We disagree.

Hot pursuit fundamentally "means some sort of a chase,"

Hot pursuit fundamentally" means some sort of a chase.
*United States v. Santana*, 427 U.S. 38, 43 (1976). The hot

pursuit exception to the warrant requirement only applies when officers are in 'immediate' and 'continuous' pursuit of a suspect from the scene of the crime." *Johnson*, 256 F.3d at 907 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984)). To qualify as hot pursuit, a chase "need not be reminiscent of the opening scene of a James Bond film," *Lange v. California*, 594 U.S. 295, 329 (2021) (Roberts, C.J., concurring). Officers act with sufficient speed to qualify as hot pursuit when they act immediately, making a "split-second decision" to pursue a suspect. *Stanton v. Sims*, 571 U.S. 3, 10 (2013) (per curiam).

But there is no hot pursuit where "the continuity of the chase was terminated permanently." *Johnson*, 256 F.3d at 908. In *Johnson*, a suspect "ran into a wooded area where he was free to run for over a half hour" rather than "into a confined area where [the police] could monitor his movements." *Id.* On that basis, we determined that "the continuity of the chase was clearly broken and a warrant was required." *Id.* We further noted that, "[a]lthough this requirement may be inconvenient to law enforcement, any other outcome renders the concept of 'hot pursuit' meaningless and allows the police to conduct warrantless searches while investigating a suspect's whereabouts." *Id.*

We recently observed in *Newman* that whether a pursuit's continuity has been broken is a function of "two interrelated considerations." 134 F.4th at 1033. First, "whether, and to what degree, the officer[] lost track of the suspect's whereabouts." *Id.* Second, whether, after losing sight of a suspect, the officer "continued to act with speed in attempting to apprehend the suspect." *Id.* Timing is relevant to both considerations. As seconds and minutes tick by, the

officer's once-clear knowledge of a suspect's position fades
till they are no longer chasing a suspect but instead searching

for him. "The more time passes without the officer's physically chasing after the suspect . . . the more likely the continuity of the chase is to break." *Id.*

In *Newman*, officers followed a suspect's truck down a dead-end street where the suspect exited his vehicle and ran directly toward the back of the plaintiff's house. *Id.* at 1028–29. Officers lost sight of the suspect for nine minutes but had probable cause to believe he was in the plaintiff's house, given that the suspect had been headed in that direction, he was not in the backyard, the terrain and fences would have hindered his flight to an adjacent property, the plaintiff's backdoor was unlocked, and the officer perceived someone interacting with the backdoor at some point during the pursuit. *Id.* at 1031. We held that the pursuit's continuity was unbroken because the officers "had a reasonably good idea where [the suspect] was hiding" for the duration of the nine minutes after they lost sight of him. *Id.* at 1033.

Comparatively, here, Officer Rose last saw the suspect fleeing toward a different property—three houses west of Plaintiffs' home—rather than directly to the property that was later searched. Officer Rose neither chased after the person nor peered over the wall to monitor the person's movements, and instead unsuccessfully attempted to cut the suspect off by patrol car. Officers had seen neither hide nor hair of the suspect for at least eighteen minutes preceding their search, in which time the suspect's movements through a suburban neighborhood were completely unknown.

Defendants suggest that they reasonably believed the suspect was somewhere within the neighborhood, and therefore, the continuity of their search was unbroken. If we were to accept this argument, it would threaten to swallow

were to accept this argument, it would threaten to swallow the warrant requirement whole. Officers may not riffle

through private spaces in an entire neighborhood merely because police have lost track of someone who earlier fled from them in the general vicinity. Lieutenant Salkoff and Officer Rose had no "reasonably good" basis for knowing where the suspect was—beyond that he was likely still in the neighborhood. *Id.* at 1033. Therefore, Defendants may not avail themselves of the hot pursuit exception to the Fourth Amendment's warrant requirement.

Defendants urge that Storm's alert salvaged the hot pursuit and gave them probable cause to search Plaintiffs' yard. Not so. Even if the dog sniff did give officers probable cause to believe the suspect was in Plaintiffs' yard, probable cause alone is insufficient to obviate the Fourth Amendment's warrant requirement—there must be both probable cause and an exigent circumstance. *Johnson*, 256 F.3d at 905.

Our case law was clear when these unfortunate events unfolded in February 2019 that a pursuit's continuity is broken when officers lose a suspect's trail, as happened here. We note that *Newman*, decided this year, is not only distinguishable but also does not bear on what was clearly established law in 2019. *See Sanderlin*, 116 F.4th at 916 (noting that "neither favorable nor damning subsequent legal developments can be used to demonstrate what law was or was not clearly established at the time of an officer's challenged conduct"). But *Johnson*, decided in 2001, made it abundantly clear to officers in 2019 that they may not sweep through an area and search the properties within it simply because they believe a suspect is somewhere therein. 256 F.3d at 907–08. Allowing such searches would turn back the clock to the age of English general warrants, which

our founders case already rejected with the inclusion of the Fourth

Case: 24-3374, 09/22/2025, DktEntry: 46.1, Page 43 of 52

Amendment. *See Payton v. New York*, 445 U.S. 573, 583 (1980).

Because Defendants lacked an exigent circumstance to search Plaintiffs' yard under clearly established law at the time of the incident, they are not entitled to qualified immunity and summary judgment was improper.

## IV.

We turn now to the fate of Shadow and Whitewall. "Reasonableness is the touchstone of any seizure under the Fourth Amendment." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). "To determine whether the shooting of the dogs was reasonable, we balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

When we evaluate an officer's use of force following a warrantless intrusion into private space, we must not conflate the unreasonable seizure claim with the unreasonable search claim challenging the entry. *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) ("[T]he objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional."). Even where officers have violated clearly established law with a warrantless search, we cannot rely on that warrantless search to say that an officer's

otherwise reasonable subsequent use of force was excessive. *See id.* at 428–29.

Case: 24-3374, 09/22/2025, DktEntry: 46.1, Page 45 of 52

14                    JONES V. CITY OF NORTH LAS VEGAS

Plaintiffs argue that Lieutenant Salkoff violated rights that were clearly established under *Hells Angels* when he shot their dogs. In *Hells Angels*, recognizing "that dogs are more than just a personal effect," we found that killing dogs is a "severe" intrusion on Fourth Amendment protections. 402 F.3d at 975. But, in that case, officers had a week to plan the execution of the warrants, were aware guard dogs resided at the premises to be searched, and devised only to use a shotgun to handle any encounters with the dogs rather than employing less-intrusive means. *Id.* at 976. We emphasized in our decision that it was not a case "where the officer was reacting to a sudden unexpected situation" or needed to make a split-second judgment. *Id.* at 978.

By contrast, in this case, officers had minutes—not days—to discover and plan for handling any dogs in Plaintiffs' backyard. Lieutenant Salkoff attempted to stir any dogs that might have been home before he entered the yard but saw no indications that dogs were present. Officers were unaware that the resident dogs were pit bulls, as opposed to a breed that may have been less sensitive to the intrusion or more readily controllable by Lieutenant Salkoff. For these reasons, the facts in this case are sufficiently distinguishable from those in *Hells Angels* that we cannot say Lieutenant Salkoff's actions in this more spontaneous confrontation violated clearly established law.

Because Plaintiffs do not offer, and we cannot find, any cases clearly establishing that Lieutenant Salkoff's actions were unreasonable, he is entitled to qualified immunity and summary judgment with respect to his use of force against Plaintiffs' dogs.

We note, however, that Lieutenant Salkoff and Officer

We note, however, that Lieutenant Sankoff and Officer
Rose may still be liable to Plaintiffs for the deaths of their

Case: 24-3374, 09/22/2025, DktEntry: 46.1, Page 47 of 52

dogs as a natural consequence of the warrantless search of their yard. *Tatum v. Moody*, 768 F.3d 806, 817 (9th Cir. 2014) ("Under § 1983, 'a person is responsible for the natural consequences of his actions.'" (simplified)) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961), *overruled in part on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Mendez*, 581 U.S. at 431 (stating that, even where plaintiffs "cannot recover on their excessive force claim, that will not foreclose recovery for injuries proximately caused *by the warrantless entry*").

## V.

Cities may be held liable under § 1983 for constitutional violations committed by their officers. *See Monell*, 436 U.S. at 694. To establish such liability, Plaintiffs must prove "(1) [they were] deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [their] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). A municipal policy can be, among other things, "a failure to train [or] supervise." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

Plaintiffs contend that the City failed to provide officers with adequate training and supervision regarding warrantless searches and the lawful use of a service weapon on pet dogs. To establish municipal liability under such a theory, the failure to train must "amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388

(quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Because the municipality must have had "actual or

constructive notice [of] a particular omission in their training program" to demonstrate deliberate indifference, a plaintiff must typically provide evidence of "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 61–62.

Plaintiffs' *Monell* claim on warrantless searches fails because Plaintiffs have not offered any evidence of a pattern of warrantless search violations or other evidence of constructive notice such that the City was deliberately indifferent to Plaintiffs' Fourth Amendment rights. As for the use-of-force claim, Plaintiffs note that the City settled three prior suits involving dog-shootings, each with different facts than those presented here, during a five-year period. Even if those settlements suggest that the police may have acted wrongfully in those cases, evidence of "sporadic" or "isolated" wrongdoing is generally insufficient to establish "that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Connick*, 563 U.S. at 62–63. Therefore, the City is entitled to summary judgment on Plaintiffs' *Monell* claims.[2]

## VI.

We reverse the district court's grant of qualified immunity and summary judgment to Lieutenant Salkoff and Officer Rose with respect to their search of Plaintiffs' backyard. Because the district court declined to exercise supplemental jurisdiction over Plaintiffs' state law claim solely based on its grant of summary judgment to

---

[2] Plaintiffs also do not argue that the consequences of a failure to train on warrantless searches are so "patently obvious" that the City could be

on warrantless searches are so "patently obvious" that the City could be liable "without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

JONES v. CITY OF NORTH LAS VEGAS                    17

Defendants on all of Plaintiffs' federal claims, its dismissal of that claim is also reversed. *See Brodheim v. Cry*, 584 F.3d 1262, 1273 (9th Cir. 2009). We affirm the district court's grant of summary judgment in all other respects. We remand for further proceedings.

The parties shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**